Good morning, Your Honors. May it please the Clerk, Chris Harshman, appearing for Appellant Ken Penders. The last time this Court seriously visited the First to File Doctrine was in 1991, more than two decades ago, and this Court has never really deviated from the notion that the First to File Doctrine requires identical actions. That's the language from the case setter case. Since then, there have been a number of district court-level opinions that have modified that finding that there needs to be only a similarity of parties, a similarity of issues, etc. They all seem to be citing each other, and in one particular case, the inter-search case that my opponent relies on, they cite the 1951 decision from the Third Circuit, but never to this Court, which, again, has never seemed to have deviated from that case setter. Mr. Harshman, what is the status of the New York action? Has it gone to trial? The New York action was dismissed per settlement. Mr. Penders' copyrights remain intact. Okay. All right. So, I guess, and you haven't refiled because of the district court's order in Los Angeles? That's correct. Okay. Say that again. What happened to the New York action? The New York action settled and settled with Mr. Penders' copyrights intact, all claims and counterclaims. Settled. If you talk slower, I can follow you better. It settled with all of Mr. Penders' copyright interests intact, is that what you said? Yes, Your Honor. So, does that mean the defendant stipulated that he owns the copyrights, or they just settled without resolving the issue and said his claims are still viable? They settled, my understanding is they settled without addressing that issue expressly, but because one of the claims brought by Archie in the New York action was the invalidation of the copyrights, that claim being dismissed, Mr. Penders' registered copyrights remain unaffected. So, the district court never opined one way or the other, and the settlement doesn't address who owns the copyright? That's correct. Okay. Mr. Penders owns the copyrights as de facto, due to the fact that he registered them with the Copyright Office. Presumptively owns. Okay. Has Mr. Penders filed now a third action against Sega? He filed just the first and second California actions. We have not refiled yet, because we didn't, one of the issues that we raised in our appeal is the prejudice that Mr. Penders will experience if he refiles the California action. We haven't had an opportunity to do, to conduct any discovery in either of the California actions, so this is not based on any part of the record, because we never had a chance And that prejudice relates to the damages calculations, correct? That's correct, yes. Now, I've reviewed the petition that Mr. Penders filed in the second California action, plaintiff's response in opposition to defendant's motion to dismiss, that's docket 17. Where in that response does Mr. Penders identify to the district judge that there is a risk to his damages calculation? I see him talking about statute of limitations, barring the claim, but does he ever mention to the district judge that if the second California action were dismissed as opposed to stayed, it would hurt him or prejudice him with respect to his total right to get damages? We raised the issue, we may have not have raised it as eloquently as we might. Could you show me where in that document you contend you raised that issue? It's a four page written response. You're talking about the opposition to the defendant's motion to dismiss? Or if I've misunderstood you and you raised it somewhere else? It would have been in that document. And let me find. What document? It's on page three. What document are you referring to? It's on page three of the defendant's motion to dismiss. It's on page three, lines 15 through 22. Okay, but I don't see anything that says anything about damages. Again, it was, I, we, well, let me ask you this, huh? They came in with a stipulation to stay the matter, right? Right. That was a stipulation. In the, yeah, that was a stipulation. What the judge did was he dismissed it with leave to amend, huh? The, okay, the first part of the answer. No, no, he dismissed it without prejudice, I'm sorry. That's correct. So he went contrary to the stipulation. That's correct. Right, and when you came back again, he was really angry with me. I, I wouldn't presume to know the motion. Well, he, well, weren't you there? Weren't you there? No, Your Honor, this was done without an order. Well, you weren't there at all. Well, he threatened sanctions. He threatened sanctions. We filed a third time. I mean, well, then you filed again. No, Your Honor, we did not. That was. A second, look, he dismissed the complaint. And then four days later, the complaint, the same thing was filed again. Because someone who filed it knew that if you dismiss it, huh, without prejudice. And there's a three year period in which you can collect damages. And when, in this, I don't know anything about these games that people play with. But I understand that when they hit the market, you got about a month when the slot machine drops all the gold out of it. And then it diminishes. So you've got to be there with your hat under the machine to get the money as it comes up. If your hat isn't there, you don't get it, right? That's our understanding, yes. Well, that's the way it works. So that's why the people on your side went. And even though the judge said he's dismissing it with leave to amend, they filed the same thing four days later. That has to be the reason for it. And then when he came back, he tossed it out. And then he filed this order. And the September the 20th, 2011, the parties in the California actions stipulated to stay that action pending resolution of the New York Act. Stay, not dismissal. Your Honor, let me finish. Recognize that claims plaintiffs asserted in the California action were based on the same alleged infringement at issue in the New York action. In addition, the parties expressly noted in their stipulation that plaintiffs' claims in the California action would be directly and significantly impacted by the outcome of the New York action. On September 26, 2011, this court issued an order dismissing the California action without prejudice, finding it more appropriate to dismiss that than to stay it. Now, why was it more appropriate? Do you know why? I don't know why, Your Honor. Well, I'll tell you, because he took it off his calendar. And the district judges, you know, they have calendars now with about 600, 700 cases. You understand that? When I was on the district court, I had my calendar at about 110, 120. Now they got a lot more, see? So that's what he was thinking about, I think. You know, and I've been in that spot myself. So he, where was I? Finding it more appropriate to dismiss that than to stay it. Okay, never explained that. In doing so, the court noted the plaintiff could refile his claim in this court following resolution of the New York action. Now, when was that resolved? Just recently. Very recently, Your Honor. How long ago? I just gave my fingertips. When was it resolved? It was settled, and we were no longer. When, when, when? I don't know. We weren't counsel in that matter. 2013? 2013, this year? The 2013. So who do you represent today? It's the Penders, but we no longer represented in that New York action. Well, don't you know the history of this case? Of this case, yes, Your Honor. I don't know the history of the New York action. Well, but the New York action impinges on this case. No, the inverse, Your Honor. This case, and I'm a lot out of time, but I just wanted to. Well, anyway, let me finish. Rather than waiting for a resolution, it's my birthday tomorrow, so I can take a little time. Thank you. Rather than waiting for a resolution in the New York action or otherwise, challenging this court's September 26, 2011 order, dismissing the first, which is the order dismissing the first complaint without prejudice. However, plaintiff opted on September the 30th, four days later. Yes, sir. Fell of a nerve, too. Four days later, after the court's order dismissing, the counsel refiled in this court an action identical, in italics, to the California action. Moreover, in filing the present action, plaintiff neglected to file a notice of related case, which is saying they're very sneaky, see? All right. Such procedural maneuvering is not well taken, nor will it be tolerated. Oh, okay. Then he goes on. Plaintiff's arguing his opposition that this action should be stayed rather than dismissed because plaintiff is informed and believes that the acts of infringement alleged in his complaint occurred in late 2008. And the statute of limitations for copyright infringement actions is three years. What he's saying is that you can only go back three years to get your money, right? Yes, sir. All right. And however, as defendants point out in their reply, the statute of limitations for copyright claims does not bar claims where the alleged infringement is continuing. Well, that's true. It can be continuing, but the gold came out in a few days, right? Correct. It's the way it works. Okay. Then he goes on and says, accordingly, the court finds that dismissal plaintiff's complaint, pending resolution of the New York action, will not prejudice plaintiff with regard to the claims asserted in this action to the extent that such claims are not resolved entirely by the New York action. And so then he goes on and he says, the statute of limitation poses no obstacle to plaintiff's allegation of continuing trademark violations by defendant. He's wrong. It's an obstacle to getting money, right? Absolutely. Okay. So he's wrong on that. Accordingly, this action is dismissed without prejudice. That's the second time, huh? Yes, sir. Plaintiff shall not refile this action in this district until resolution, this is in italics, of the New York action. If plaintiff does refile this action upon resolution of the New York action, plaintiff shall file with that notice, a notice of related case, referring to this action. And so it doesn't stop you, again, from refiling, but it stops you from collecting the money, right? Absolutely. Okay. And then it says, failure to heed this admonition will expose plaintiffs to sanctions under the federal rule of civil procedure 11B. Huh? You weren't there, huh? No, he said this without oral argument. What? He decided this without oral argument, right? Without oral argument? Yes. All right. But, so, you know, they filed it without notice of related action because they probably didn't read the federal rules, the court rules there, and they were just hoping they'd file this action again, it would go to the wheel, and they might get away from this judge. Actually, no, you're right. Well, that's why they do those things. In our reply brief, you pointed out. I know, I know, but I'll tell you, that's why they do those things. They find it as an identical case. Yes, I know what goes on. So he's just wrong on all of this. He's threatening sanctions. And I don't know why I thought it was in court, but, you know, I have a lot of cases that go through the court all week. So, anyway, my concern is that, yes, he was wrong in his understanding of the implication on damages, but nobody told him that. Nobody pointed that out to him in the written papers. Maybe that would have come out in oral argument, but my understanding is there aren't that many oral arguments, and nobody pointed it out in the written motion. What would the implications would be? We pointed out the statute of limitations issue. We didn't address damages because, quite honestly, we didn't have the record to do so. We hadn't had any opportunities, you know, to conduct discovery then or in the original California case. And I'm sure my esteemed colleagues at Federal and West would have pounced on us for the fact that we were, you know, conjuring up an argument regarding damages out of, you know, DNA. Well, then how can you make that argument unappeal? I mean, the argument, if we don't know, if you know enough now to say that Penders was prejudiced because he'd lose the opportunity to make the damages for the same reasons that Justice Pragerson just explained, then you could have made that same point in writing, at least saying that, well, we don't know the evidence yet, but we might be in jeopardy of losing significant damages, and therefore, Judge, please stay and don't dismiss it. With respect, Your Honor, that's the argument we are making. We're not saying that, you know, that the prejudice would have been greater, et cetera. We're saying where there's a risk of prejudice, and that's the case law that we cited in our position and also in our briefs, then it should be, you know. And that makes a lot of sense to me, and you could have said exactly the same thing at the court below. We did, Your Honor. Well, you didn't. As we read the pleading, what you could have done or what your predecessor counsel could have done was filed a motion for reconsideration making that point expressly that that didn't happen. My understanding of Rule 60 is that you can only bring a motion for reconsideration where there's some new fact or some new, you know, and again, we haven't had an opportunity to develop any new facts, so we didn't have any grounds to do that. Talk slower so I can understand you. We didn't have any. Everybody today talks fast. They text while they talk. You know, just talk to me. It's that, Your Honor, and the clock ticking. Don't worry about the clock. Worry about the gold that didn't come out. We raised, you know, we raised the point in our opposition, and again, in our appeal brief, you know, quoting the All-State, I'm sorry, the All-Trade case, statute of limitations, where, as here, dismissal would risk encountering statute of limitations problem. A second file of action should be stayed rather than dismissed. Why take chances is simply. But if it's purely, counsel, if it's purely a statute of limitation issue, you're protected because the case law says the statute of limitation is rolling so that it's not triggered until the last act of infringement. That's not the issue that was raised, or that was the issue that was raised with the district court. The issue that was not raised, and therefore the district court didn't have an opportunity to realize that it had committed error, was that it may very well be that the statute of limitation rolls along, but the bulk of the damages are incurred in the first three years following, I guess, the issuance to the market of the video game that includes Sonic the Hedgehog. So that if you wait four years down the road to file the action, it may still be timely under the statute, but you can't reach back all the way to the date that the technology was introduced to the market when all the sales occur. My response to that would be that Judge Wright stated in his order that there would be no prejudice to penders, and that was an abuse of discretion because of the record of records. But based on the argument that was made to him, he's right. If you're looking at it solely from the standpoint of a rolling statute of limitation, you're not prejudiced. You can still file your lawsuit four, six, eight years down the road as long as there are still video games with Sonic the Hedgehog being sold out there. I guess I'm at a loss to respond as to how we would have made an argument regarding damages when it was entirely speculative and we had no ability to develop any record on that point. But I don't understand even what you're saying now. You knew, you knew, you knew you had the three years. You could reach back three years to get the money, right? And by the time, when you filed, you were within that period, so you could reach out and get it. And then you moved to stay and not, that's what you moved. But then he didn't like that idea, and he said, well, we'll dismiss it without prejudice. And then someone that knew what was going on filed it four days later. Just, they just said, you know, this is, we can't do this. And then he gets wind of it. Of course, we have computers that bring all this stuff together. So we assign related cases to the same judge in the district court, and he gets it. And then he puts out this order. And nobody does anything after that. With respect, is there malpractice here? After the order was filed, we filed this appeal. What? After that order was filed, we filed this appeal. What'd you say? After that order was filed, we did do something. We filed this instant appeal. But the malpractice may have already been committed. If there was malpractice, then yes. I mean, obviously, the problem that we're wrestling with here is waiver. If you didn't raise it below in the district court, and you raised it for the first time on appeal, why should we excuse the waiver? Well, I would contend that there was no waiver, because the statute of limitations issue was raised. Statute of limitations, even while we're wrestling. But the issue is damages. It's not a statute of limitation. And nobody briefed a word about damages to the judge. So the district court never had an opportunity to correct what you contend is reversible error. But there's no ability to generate any evidence on that point. And when there is no evidence, it's reversible error. It's an abuse of discretion to rule on a matter where you don't know. But, you know, here, statute of limitations has a different context. Statute of limitations involves how far you can reach back for damages, not when you need to file your lawsuit. You could file your lawsuit as long as you have the patent, and the patent doesn't expire. And there's an infringement. You could file your lawsuit, but you can only go back three years. So if you've got a copyright infringement and nothing's been sold, no income has come out, then earned by someone else on the copyrighted material, then there's really no point in filing an infringement case. For all practical purposes, since the attorney's fees in filing it would eat up whatever income would come in in the next decade, something like that. That's correct. I mean, maybe there could be an argument that the stipulation was to stay, but he decided to get rid of the case. And maybe that's a basis for abuse of discretion. The order dismissing the first action, the one where there was a stipulation to stay, where he doesn't explain his reasoning as to why he deemed it more appropriate to dismiss, that order was rife with inaccuracies. He thought that they were identical cases. That order was what? Rife with inaccuracies, full of inaccuracies. Rife with accuracies? Inaccuracies. Oh, rife with inaccuracies. He thought, as he stated in that order, the cases were identical. They've never been identical. They have different parties. They deal with different acts of infringement. Same underlying works, but different. Let me ask you a question. How much money is involved here? We haven't had any opportunity to do discovery, so I couldn't answer that. Don't they report sales on these things? I mean, like they do in the movies? I'm guesstimating $700,000. How much? Maybe $700,000. How much? $700,000, maybe. $700,000 total sales? No, that we believe Mr. Penders might be depending on. So what's his percentage? That is something that we would have to go to trial on. Do you have any idea? I'm guessing 1%, 2%. I don't know what would be there. Again, we haven't had any opportunity to develop the factual record in this case at all. Maybe you ought to sit down and try to settle this case. We won't watch. What did you say? I think we understand your position. Okay. I guess I'm way past the point of being able to ask to reserve timber, but let's hear from the other side. Thank you. Okay. Good morning. May it please the Court. Jennifer Kelly of Fenwick and West on behalf of Sega of America, Inc. and Electronic Arts, Inc. I think before I begin with a few points I want to make, I wanted to answer the panel's question that you had asked earlier, which was when did the New York action resolve? And the dismissal was filed on July 1st, 2013. Hold on. I'll put my hearing aids on so I can hear you. They work pretty good. They cost $7,500. Happy birthday, Your Honor. So I want to start with the point that I think, that I know both parties agree on, which is the standard of review here is abuse of discretion. The question is not what we have done if we were sitting in Judge Wright's shoes. The question is did he abuse his discretion in doing what he did. And we're not looking at what he did the first time around when he entered the dismissal order in response to the stipulation that we filed. We're looking at what he did the second time around when it's clear that he wasn't confused about what had happened procedurally. He was very clear on what had happened. And I agree with you. He was angry. That came out in his order. But I think that this is... Were you there? No. There was no oral argument, Your Honor. Yeah. But I took that from the order. So your point is that the only thing we're reviewing here is the order that Judge Fragerson read to Mr. Harshman. Correct. Yes. So did he abuse his discretion in issuing the order after the second action was filed? Yes. Yes, Your Honor. Counsel, I have three related questions for you on the first-to-file doctrine. Okay. First, is the Ninth Circuit precedent, not the district court decisions generally, but is the Ninth Circuit precedent on the first-to-file doctrine sufficiently clear? Second, should we clarify it? Should the Ninth Circuit clarify it? And third, if so, is this the case to clarify it? Thank you, Your Honor. I will begin with the first question, which was, is the state of the law in the Ninth Circuit sufficiently clear with respect to the boundaries of the first-to-file doctrine? And I know that Your Honor has faced this issue in the past. You had a case before you earlier this year, the Hare v. Ahaw case, where you recognized, actually, this very issue, which was that the Ninth Circuit has not spoken on the issue of the extent to which there must be identicality between the parties and the issues. But that's just one district judge's opinion. Yeah, but he's a really important district judge today on this issue. Your Honor very rightly recognized that the Colorado River doctrine, in which a Federal court defers to a prior State court proceeding, does not actually require that same level of parallelism, and yet the idea is that the Federal courts are the Federal comedy is even broader than the comedy that is afforded in the Federal-State context, so that it makes sense to have the doctrine apply even more broadly and not require identicality. And here, I think that it definitely makes sense to not have required it in this case, because it's the same, exact same core issue in both cases, which Mr. Penders recognized. No, but my first question really is, and I'm serious, would it be helpful to practitioners and to district judges for the Ninth Circuit to clarify the rules on the first-to-file doctrines boundaries, or in your opinion, is it sufficiently clear? And if you say it would be helpful to clarify it, then we'll move into either how it should be clarified and whether this is the case to do it or not. Well, Your Honor, I do not – I do believe that it is sufficiently clear. I do. Okay. Yes. Would you like me to go on to address the other questions or return to my – No, that's fine. You've answered it. Okay. Thank you, Your Honor. So I believe that the panel really did hit the nail on the head when it recognized that this issue about damages was not put before Judge Wright. He wasn't in a position where he could have considered it. The argument simply was not made. And the argument could have been made without evidence to back it up, just the way that it's done here. Your Honor, is – I don't know of any reason why a motion for reconsideration could not have been supported with an affidavit from somebody who's knowledgeable about, you know, how sales typically go with new copyrighted figures that appear in video games. The district court might have said, look, that evidence was available to you before and you never raised it. I suppose that's an issue. But the problem is that nobody ever did – nobody ever tried. Right. I agree with you. That is one of the things that Mr. Penders could have done. He had a number of options available to him, even after the first – the first order, after his case was dismissed in response to the stipulation. He could have filed an appeal of that order. He could have filed a motion for reconsideration and at least made the argument, if not come forward with an affidavit that the court would accept. He could have amended his copyright. Let me think about that a minute. Could he have appealed the dismissal without prejudice of the first Los Angeles action? I'm not sure that's a final order, is it? Well, how is it any less final than the second order? Because it's without prejudice. They were both without prejudice. Yeah. I guess it would be. I guess it would be appealable. Okay. Right. Right. So he could have done that. He could have filed a motion for reconsideration. He could have amended his counterclaims in the New York action and brought Sega and EAC. Was your client a party to the stipulation? To the stipulation. Was that the stay? Yes. The stipulation was the stay. Yes. So who's your client again? Sega and EA. Sega. Sega was a party to that. Yes. And it didn't stipulation wasn't to the effect of stay or dismiss without prejudice. It was to stay. Correct. So his order went beyond the stipulation. Yes. But nobody complained. Well, it happened. It all happened very quickly. Well, the next thing that happened was the new action gets filed four days later. Yes. Yes. And I'm happy to tell the panel what happened after that. I'm all ears. We were a little surprised to have gotten the new complaint. I contacted counsel for Mr. Pender and I said I was going to file a notice of related case and didn't get a response to that. Was in the process of preparing my own notice of related case to inform the court as I am obligated to do under the local rules. And as my associate was checking the docket, she noticed it had been transferred. So we didn't file that. I reached out to Mr. Pender's counsel and said, I see that we've got a new action. I think that we need to figure out what to do here. Excuse me. Were you just saying that when the second action was filed, it was automatically assigned to some other judge, but then within the court, without anyone having to file a notice of related case, somehow within the machinations of the court, it got reassigned to Judge Wright? That's correct. All right. Thank you. Sorry for the interruption. No problem. How do you know that? How do I know that? Yeah. Because my office was in the process of preparing a notice of related case. Talk slower for me, would you? My office was in the process of preparing a notice of related case. Because it's not just the filing party who's obligated. The local rule makes clear that all attorneys are on, have a duty to inform the court when a related case has been filed. So I directed my associate. I think, am I wrong about this? I think most of the time, you know, they have computers, and the clerk's office picks up this. You know, they say it's a related case. I'm sure that there are many ways. So we have other, you know, so you say it was assigned to another judge? Initially, yes. Well, who was the other judge it was assigned to? I'm sorry, I don't recall. But I think what you're saying is the clerk's office must have realized that it should have gone to Judge Wright because on their own, you could see on the docket that they administratively transferred it. Yes. From whoever was pulled off the wheel, and then they sent it to Judge Wright saying this is related to the other case. That's correct. Okay. So then what happened? So I contacted Mr. Pender's counsel, and I said, what are we going to do about this? Are you willing to enter into, you know, we're considering another motion to dismiss or to stay. Can we enter into some kind of a stipulation? Will you stipulate to this? And they said that they wanted, they would not agree to a dismissal or a stay. And I said, okay, I need to talk with my client, but will you, if you won't agree to that, will you agree to an extension of time for us to respond to our complaint? Let's push it out a few months past the trial date in the New York action, which at that point was pending. And I think it was set for late October, and this was filed early October, so we weren't that far off. And they weren't willing to do that. They said that they wanted a tolling agreement for an extension, which didn't make any sense to me. So I said, okay, I guess we're just going to file a motion, and we'll be asking the court to address this. And that's, we went from there. By the way, to answer the court's question, in looking at the excerpt of Record 25, which is the docket sheet from this case in the Central District of California, when this case was first filed, it was automatically assigned to District Judge Dolly Gee on October 3rd. And then 12 days later, the court issued an order reassigning the case to Judge Wright. And that was done automatically, or done internally within the court. Yes. Getting back to my earlier point about what could he have done, I mentioned the first two things. The third point that I wanted to make is that he could have amended his counterclaim in the New York action and brought all of the parties together in the same court. So was there personal jurisdiction over all the California defendants in the New York case? Yes. Sales were occurring all over the country. And before, I suspect that Mr. Penders did not want to alleviate in California because before he filed the California action, he had brought a motion to dismiss or transfer under Rules 12b-2, and I believe it was for a nonconvenience, in the New York court. And that was denied. So he wanted to transfer the New York action to Los Angeles? Yes. Okay. Yes. But Archie Comics is in New York, and Mr. Penders, I believe, is a resident of California. But there was nothing preventing him from litigating it, bringing the claims against SEGA and EA in New York. I just think he didn't want to litigate in that court. Well, didn't your clients anticipatorily file the action in New York after they received the demand letter from Mr. Penders' lawyer? It wasn't my clients who filed that action. It was Archie Comics. Or Archie Comics. The licensee of SEGA. To obtain a declaratory judgment as to who owned the copyright. Yes. Okay. Yes. That's what happened there. And the final point that I would like to address is that even if the statute of limitations does apply, it's not going to gut his claim, okay? We are talking about damages. They may be impacted, but he will be able to get damages going for the three years back. And I know we've talked about this pot of gold theory, but I want to challenge that a little bit. Because if he has stated in his complaint that he believes that the sales began in July of 2008, but he didn't even pass suit against my clients until September 26th. I'm sorry. May 31st, 2011, which is two and a half years after the first sales allegedly began. So it's now a thimble of gold. Well, the pot was gone at that point. What do you mean the problem is gone at that point? The what? What do you mean the problem is gone? I said the pot of gold is already gone. Under your Honor's theory that the pot of gold is there. No, no. It just sounded, you know, I just sort of envisioned myself in Las Vegas. That's all. It's no theory. I'm just trying to figure out how this whole business works. I haven't had any cases like this before. That's one of the wonderful parts of this job. You get new stuff all the time. Video games happen to be an area of my expertise both personally and legally. What did you say? Video games happen to be an area of my expertise both personally and professionally. So you started before law school? Is that what you're telling us? Yes. Well, I'm an expert in whatever I happen to be doing at the time. As is true of most experts. I think that's the next case. And the final point is that there are many other remedies that are still available to Mr. Penders. If he would have refiled the day after the New York action was solved, he could have refiled on July 2nd, 2013. Get damages three years looking back. This is all the same. He prevails, of course. An injunction, and dare I say it, lest it come back to bite me in the mediation, but an injunction can be the most valuable thing that you can get in an IP case. So he's not without that remedy if he were to prevail. Thank you. Thank you. Thank you. He left you a few minutes on her tab. Go ahead. Thank you, Your Honor. Just briefly, in our reply brief, pages eight and nine, we address the issue of the missing notice of related cases. Having read the local rules, we didn't believe we needed to file one since we identified it as an identical, not a related case in the civil cover sheet that we submitted to the court when we filed the complaint. I mean, under the local rule, doesn't that make it a related case if it's an identical action? The civil cover sheet differentiates between identical actions, which we identified in the original case number, and related cases. And the local rules, again, this is all in my brief. So what was your client thinking when the district court ordered the case dismissed without prejudice so that you could await the outcome of the New York action, which was still pending, and then four days later you filed an identical case in Los Angeles? It was not what the client was thinking. It was what the lawyer was thinking. Thank you. The original dismissing order from the first California action, again, was very clear, but also very inaccurate in stating that we could refile after the dismissal or after the resolution of the state court action. There was never a state court action contemplated. No, that's right. It did refer to a state court action, and your action in New York was a federal court action. Correct, and also not an identical action. Again, the New York action was Archie v. Penders. The California action was Penders v. Sega NDA. The same copyrights were underneath both, but the New York action was related to comic book publication. The California cases were related to video game publication, et cetera. So are you saying that Mr. Penders' lawyer at that time didn't understand Judge Wright's order to mean we have to wait until after the New York case is resolved before we can proceed with the Los Angeles case? Without speaking for my colleague, my understanding is that his belief was, because the statute of limitations and the damages issue was looming nigh, was about to become a huge problem, and because Judge Wright's order of dismissal was so inaccurate and so obviously didn't reflect the reality of what he was opining on, that filing the second action in California was not in violation of the order, the text of the order, and also acted to, as quickly as possible, preserve Mr. Penders' rights. As we asked you when you were up here before, why didn't he say that in the four-page pleading that he filed in opposition to the motion to dismiss the second action in Los Angeles? If that's truly what he was thinking. I can't answer that, except that hindsight is 20-20. And arguments not made before the district court are waived if they're raised for the first time on appeal. And, again, I would argue that it was raised, just maybe not as verbosely as necessary. The statute of limitations and damages are intertwined at this point because, Your Honors, as Judge Ferguson has described, the pot of gold was diminished. Okay. If there are no further questions, I thank you, Your Honors. Thank you. Thank you.
judges: Simon, Pregerson, Tallman